FILED
June 28, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____KG_____
                DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **GREAT WEST CASUALTY COMPANY,** <br> *Plaintiff,* <br><br> **v.** <br><br> **DEEPWELL ENERGY SERVICES, LLC, ET AL.,** <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | 7:23-cv-101 <br><br> **Case No. MO:21-CV-00207-DC** |

### DEEPWELL ENERGY SERVICES, LLC'S SECOND AMENDED THIRD-PARTY COMPLAINT

Defendant, Deepwell Energy Services, LLC ("Deepwell"), files its Second Amended Third-Party Complaint seeking the relief stated below:

### Nature of the Action.

1. This Second Amended Third-Party Complaint is for declaratory and monetary relief, brought under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. Deepwell requests that this Court interpret, in accordance with Mississippi law, certain liability insurance policies issued to it or for its benefit, and declare that Gravity Midstream LLC (f/k/a On Point Oilfield Holdings, LLC, and OP Permian Basin I, LLC), and Gravity Water Midstream Operating LLC (f/k/a On Point Oilfield Operations, LLC), and their employee Aaron Montanez (collectively "Gravity" or "On Point") were additional insureds under policies of insurance issued by the third-party defendants, that liability insurance coverage exists for the sums paid in settlement of a lawsuit against On Point and its employee, all as described more fully below, and, in the event Great West Casualty Company ("Great West") and/or Ironshore Insurance Services LLC ("Ironshore") are/is

1

declared to have no coverage for that settlement, that judgment be entered against one or more of the third-party defendants for the sums contributed by Great West and/or Ironshore in that settlement, together with the sum of $1,000,000 in favor of Deepwell for payment of its self-insured retention required by Great West's policy.

## Parties

2.  Deepwell is a limited liability company organized, existing and in good standing under the laws of Mississippi, whose principal place of business is in Marion County, Mississippi and whose members are citizens of Mississippi.

3.  Third-Party Defendant Ironshore, self-described as a coverholder for Lloyd's of London, is believed to be organized and existing under the laws of New York. Ironshore is believed to be doing business in Texas and may be served with process by and through the Texas Commissioner of Insurance at 333 Guadalupe, Austin, Texas 78701 or P.O. Box 149104, MC112-2A Austin, Texas 78714-9104.

4.  Third-Party Defendant National Fire & Marine Insurance Company ("National Fire"), a subsidiary and/or affiliated company of Berkshire Hathaway Inc. and Berkshire Hathaway Specialty Insurance, is an insurance company believed to be organized and existing under the laws of Nebraska, whose home office and principal place of business is 1314 Douglas Street, Suite 1400, Omaha, NE 68102-1944. National Fire is believed to be doing business in Texas and may be served with process by and through the Texas Commissioner of Insurance at 333 Guadalupe, Austin, Texas 78701 or P.O. Box 149104, MC112-2A Austin, Texas 78714-9104.

5.  Third-Party Defendant Endurance American Insurance Company ("Endurance") is an insurance company believed to be organized and existing under the laws of Delaware, whose registered office is located at 1209 Orange Street, Wilmington, Delaware and whose home office

and principal place of business is believed to be at 4 Manhattanville Road, Purchase, NY 10577-2319. Endurance is believed to be doing business in Texas and may be served with process by and through its registered agent, CT Corporation System, 1999 Bryan Street, Ste. 900 Dallas, Texas 75201.

6.     Third-Party Defendant Colony Insurance Company ("Colony") is an insurance company believed to be organized and existing under the laws of Virginia, whose home office and principal place of business is believed to be at 8720 Stony Point Parkway Suite 400 Richmond, VA 23235. Colony is believed to be doing business in Texas and may be served with process by and through the Texas Commissioner of Insurance at 333 Guadalupe, Austin, Texas 78701 or P.O. Box 149104, MC112-2A Austin, Texas 78714-9104.

7.     Third-Party Defendant AIG Specialty Insurance Company ("ASIC") is an insurance company believed to be organized under the laws of Illinois, whose home office and principal place of business is believed to be at 175 Water Street, New York, NY 10038. ASIC is believed to be doing business in Texas and may be served with process by and through its registered agent, the Texas Commissioner of Insurance at 333 Guadalupe, Austin, Texas 78701 or P.O. Box 149104, MC112-2A Austin, Texas 78714-9104.

8.     Third-Party Defendant Markel International Insurance Company ("Markel") is an insurance company believed to be organized and existing under the laws of a state other than Texas. Markel is believed to be doing business in the State of Texas. Defendant Markel may be served through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

**Jurisdiction and Venue**

9. Jurisdiction is proper in this Court in accordance with 28 U.S.C. § 1332. The matters in controversy exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10. The Third-Party Defendants are licensed to do and/or are doing business in Texas. Thus, the Third-Party Defendants have minimum contacts within Texas, the sufficiency of which is such that this Court's exercise of personal jurisdiction over the Third-Party Defendants will comport with fair play and substantial justice and will not violate their constitutional due process rights.

11. Pendent or ancillary venue is proper in this Court.

**Factual Background**

12. Deepwell incorporates herein by reference those factual allegations set forth in paragraphs 7-30 of its Original Counterclaim [9] against Counter-Defendant Great West as if those allegations were fully set forth herein.

13. Calvillo's Underlying Action and Montanez's Underlying Action have now been settled and the plaintiffs in those actions have released their claims against Deepwell, On Point, Great West, and the insurers named as Third-Party Defendants.

14. Those settlements were facilitated by an agreement among the various parties, the specific terms of which are confidential but the purpose of which was to allow settlement contributions to be made without prejudice and with full recourse to recover those contributions based on the adjudication of coverage issues. Liberty Mutual Fire Insurance Company ("Liberty Mutual") waived any recovery rights and therefore is not a party to this action.

15. The settlement of Calvillo's Underlying Action was funded by contributions from Liberty Mutual, Ironshore, Deepwell, Great West, and National Fire.

16. Liberty Mutual issued Commercial General Liability Policy No. TB2-641-445005-018 to Deepwell with effective dates July 1, 2018 to July 1, 2019 (the "Liberty Mutual Policy"). The Liberty Mutual Policy is incorporated herein by reference. Although Liberty Mutual is not a party and coverage under the Liberty Mutual Policy has been exhausted in payment of one or more claims arising out of the Accident, that policy is at issue because Ironshore's policy "follows form" with the Liberty Mutual Policy. The Liberty Mutual Policy Declarations lists a limit of $1,000,000 of insurance for each occurrence.

17. Included in the Liberty Mutual Policy is an endorsement, "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization," form CG 20 10 10 01. Also included in the Liberty Mutual Policy is an endorsement, "Additional Insured – Owners, Lessees 8 or Contractors – Automatic Status When Required in Construction Agreement with You," form CG 20 33 04 13.

18. On Point and Montanez were additional insureds under the Liberty Mutual Policy. The Liberty Mutual Policy covered the claims asserted in Calvillo's Underlying Action.

19. In Calvillo's Underlying Action, On Point and Montanez were entitled to indemnity under the Liberty Mutual Policy.

20. In accordance with the MSA, On Point demanded that Deepwell indemnify it against liability in Calvillo's Underlying Action. The Liberty Mutual Policy provided Deepwell with coverage for On Point's indemnity demand.

21. Liberty Mutual was legally obligated to pay those sums that On Point, Montanez and Deepwell were legally obligated to pay as damages in and on account of Calvillo's Underlying Action, subject to the deductible and limits of insurance.

22. Liberty Mutual's insureds have fully complied with all terms of the Liberty Mutual Policy.

### Count I – Declaratory Judgment Regarding the Ironshore Policy

23. Deepwell adopts and incorporates by reference its allegations in the above paragraphs.

24. Ironshore issued Commercial Umbrella Liability Policy No. 003216201 (the "Ironshore Policy") to Deepwell with effective dates of July 1, 2018 to July 1, 2019. The Ironshore Policy is incorporated herein by reference.

25. Ironshore is the entity legally liable for performing the duties and obligations of the insurer in the Ironshore Policy.

26. The Ironshore Policy "follows form" with the Liberty Mutual Policy, including information furnished directly or indirectly in connection with the Liberty Mutual Policy, providing substantially the same bodily injury and property damage liability insurance coverage with limits of $10,000,000 in excess of the Liberty Mutual Policy limits.

27. The limits of insurance in the Liberty Mutual Policy were exhausted by payment of those limits as a contribution to settlement of Calvillo's Underlying Action.

28. In accordance with the terms and conditions of the Ironshore Policy, On Point and Montanez were additional insureds under the Ironshore Policy.

29. The Ironshore Policy covered the claims asserted Calvillo's Underlying Action.

30. In accordance with the MSA, On Point demanded that Deepwell indemnify it against liability in Calvillo's Underlying Action. The Ironshore Policy provided Deepwell with coverage for On Point's indemnity demand.

31. Ironshore is legally obligated to pay those sums that On Point, Montanez and Deepwell were legally obligated to pay as damages in Calvillo's Underlying Action, subject to the limits of insurance.

32. Ironshore's insureds have fully complied with all terms of the Ironshore Policy.

**Count II – Declaratory Judgment Regarding the National Fire Policy**

33. Deepwell adopts and incorporates by reference its allegations in the above paragraphs.

34. National Fire issued Commercial Retained Limit Liability Insurance Policy No. 42-RLO-301865-04 (the "National Fire Policy") to KLLM Transport Services with effective dates of October 1, 2018 to October 1, 2019. The National Fire Policy is incorporated herein by reference.

35. Deepwell was an additional insured under the National Fire Policy.

36. On Point and Montanez were additional insureds under the National Fire Policy.

37. The National Fire Policy covered the claims asserted in Calvillo's Underlying Action.

38. In accordance with the MSA, On Point demanded that Deepwell indemnify it against liability in Calvillo's Underlying Action. The National Fire Policy provided Deepwell with coverage for On Point's indemnity demand.

39. National Fire is legally obligated to pay those sums that On Point, Montanez and Deepwell were legally obligated to pay as damages in and on account of Calvillo's Underlying Action, subject to the retained limits and limits of insurance.

40. National Fire's insureds have fully complied with all terms of the National Fire Policy.

### Count III – Declaratory Judgment Regarding the Endurance Policies

41. Deepwell adopts and incorporates by reference its allegations in the above paragraphs.

42. Endurance issued Commercial Excess Liability Policy No. XSC30000181702 (Endurance #1 Policy) to KLLM Transport Services, LLC with effective dates of October 1, 2018 to October 1, 2019. The Endurance #1 Policy is incorporated herein by reference.

43. Endurance also issued Commercial Excess Liability Policy No. EXC30000474401 (the "Endurance #2 Policy") to KLLM Transport Services, LLC with effective dates of October 1, 2018 to October 1, 2019. The Endurance #2 Policy is incorporated herein by reference.

44. Deepwell was an additional insured under the Endurance #1 and #2 Policies (collectively the "Endurance Policies").

45. On Point and Montanez were additional insureds under the Endurance Policies.

46. The Endurance Policies covered the claims asserted in Calvillo's Underlying Action.

47. In accordance with the MSA, On Point demanded that Deepwell indemnify it against liability in Calvillo's Underlying Action. The Endurance Policies provided Deepwell with coverage for On Point's indemnity demand.

48. Endurance is legally obligated to pay under the Endurance Policies those sums that On Point, Montanez and Deepwell were legally obligated to pay as damages in Calvillo's Underlying Action, subject to the underlying limits of insurance and limits of insurance.

49. Endurance's insureds have fully complied with all terms of the Endurance Policies.

**Count IV – Declaratory Judgment Regarding the Colony Policy**

50. Deepwell adopts and incorporates by reference its allegations in the above paragraphs.

51. Colony issued Commercial Excess Liability Policy No. AR660844 (the "Colony Policy") to KLLM Transport Services with effective dates of October 1, 2018 to October 1, 2019. The Colony Policy is incorporated herein by reference.

52. Deepwell was an additional insured under the Colony Policy.

53. On Point and Montanez were additional insureds under the Colony Policy.

54. The Colony Policy covered the claims asserted in Calvillo's Underlying Action.

55. In accordance with the MSA, On Point demanded that Deepwell indemnify it against liability in Calvillo's Underlying Action. The Colony Policy provided Deepwell with coverage for On Point's indemnity demand.

56. Colony is legally obligated to pay those sums that On Point, Montanez and Deepwell were legally obligated to pay as damages in and on account of Calvillo's Underlying Action, subject to the limits of insurance.

57. Colony's insureds have fully complied with all terms of the Colony Policy.

**Count V – Declaratory Judgment Regarding the ASIC Policy**

58. Deepwell adopts and incorporates by reference its allegations in the above paragraphs.

59. ASIC issued Contractor's Pollution Liability Policy No. CPO 18194074 (the "ASIC Policy") to Deepwell with effective dates of October 1, 2018 to October 1, 2019. The AIG Policy is incorporated herein by reference.

60. Deepwell was an additional insured under the ASIC Policy.

61. On Point and Montanez were additional insureds under the ASIC Policy.

62. The ASIC Policy covered the claims asserted in Calvillo's Underlying Action.

63. In accordance with the MSA, On Point demanded that Deepwell indemnify it against liability in Calvillo's Underlying Action. The ASIC Policy provided Deepwell with coverage for On Point's indemnity demand.

64. ASIC is legally obligated to pay under the ASIC Policy those sums that On Point, Montanez and Deepwell were legally obligated to pay as damages in or on account of Calvillo's Underlying Action, subject to any applicable deductible and limits of insurance.

65. ASIC's insureds have fully complied with all terms of the ASIC Policy.

### Count VI – Declaratory Judgment Regarding the Markel Policies

66. Deepwell adopts and incorporates by reference its allegations in the above paragraphs.

67. Markel issued Commercial General Liability Policy No. JCGL100856 (the "Markel CGL Policy") to On Point, *et al.* with effective dates of April 1, 2018 to April 1, 2019. Markel also issued Excess Liability Policy No. JUMB100727 (the "Markel Excess Policy") to On Point, *et al.* with effective dates of April 1, 2018 to April 1, 2019. The Markel CGL Policy and the Markel Excess Policy (collectively "the Markel Policies") are incorporated herein by reference.

68. Montanez was an additional insured under the Markel Policies.

69. Deepwell was an additional insured under the Markel Policies.

70. The Markel Policies covered the claims asserted in Calvillo"s Underlying Actions.

71. Markel is legally obligated to pay those sums that On Point, Montanez and Deepwell were legally obligated to pay as damages in or on account of Calvillo's Underlying Action, subject to the limits of insurance.

72. In accordance with the MSA, On Point demanded that Deepwell indemnify it against liability in Calvillo's Underlying Action. The Markel Policy provided Deepwell with coverage for On Point's indemnity demand.

73. Markel's insureds have fully complied with all terms of the Markel Policies.

## Prayer for Relief

Deepwell therefore requests a declaratory judgment, declaring:

a) That On Point and Montanez are additional insureds under the Liberty Mutual, Ironshore, National Fire, Endurance #1 and #2, Colony, and ASIC Policies;

b) That Deepwell is an additional insured under the Markel Policies;

c) That the Liberty Mutual, Ironshore, National Fire, Endurance #1 and #2, Colony, ASIC and Markel Policies cover the claims asserted in or on account of Calvillo's Underlying Action;

d) That Deepwell's MSA-based indemnity obligation to On Point and Montanez was covered by the Liberty Mutual, Ironshore, National Fire, Endurance #1 and #2, Colony, and ASIC Policies;

e) That Ironshore, National Fire, Endurance #1 and #2, Colony, ASIC, and Markel are legally obligated to pay those sums that Deepwell, Montanez and On Point were legally obligated to pay as damages in or on account of Calvillo's Underlying Action or otherwise on account of the claims asserted in Calvillo's Underlying Action, subject to their retentions and limits of insurance;

f) That the "lowest common denominator" of insurance limits of liability coverage for the Accident, in connection with the contractual indemnity obligations outlined

11

in the MSA, was not less than the amount paid in settlement of Calvillo's Underlying Action; and

g) That Liberty Mutual, Ironshore, National Fire, Endurance #1 and #2, Colony, ASIC, and Markel are otherwise legally obligated to perform the duties imposed on them by their respective policies.

Deepwell further requests a monetary judgment(s) as follows:

(a) In the event Great West is declared to have no coverage for the Accident, Deepwell requests that judgment be entered against one or more of the Third-Party Defendants, in favor of Great West or Deepwell, in the amount paid by Great West in settlement of the Calvillo Underlying Action, together with prejudgment and post-judgment interest;

(b) In the event Great West is declared to have no coverage for the Accident, Deepwell requests that judgment be entered against one or more of the Third-Party Defendants in favor of Deepwell for its self-insured retention in the amount of $1,000,000, together with prejudgment and post-judgment interest; and

(c) In the event Ironshore is declared to be entitled to recover the sum it contributed in settlement of Calvillo's Underlying Action, that judgment be entered against one or more of the other Third Party Defendants in favor of Deepwell in the amount, if any, that Deepwell is adjudicated to owe to Ironshore, together with prejudgment interest and post-judgment interest.

Deepwell further requests any other relief to which it is entitled as a matter of law or equity, or which the Court determines to be just and proper, including relief in accordance with 28 U.S.C. § 2202, and it requests trial by jury of any contested issues of fact and all costs of court.

**RESPECTFULLY SUBMITTED**, this __th day of March, 2023.

By: /s/ Jeffrey S. Davis
Jeffrey S. Davis (Texas Bar #00783936)
BRADLEY ARANT BOULT CUMMINGS LLP
600 Travis Street, Suite 4800
Houston, TX 77002
Telephone:  713.576.0300
Facsimile:  713.576.0301
jsdavis@bradley.com

Roy D. Campbell, III (*Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 E. Capitol Street, Suite 1000
Jackson, MS 39201
Telephone:  (601) 948-8000
Facsimile:   (601) 948-3000
rcampbell@bradley.com

***Attorneys for Deepwell Energy Services, LLC***

## CERTIFICATE OF SERVICE

I certify that on March __, 2023, I served a true and correct copy of the foregoing document via CM/ECF to all counsel of record.

By: /s/ Jeffrey S. Davis

13